UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL RUSS OXLEY,<br><br>    Plaintiff,<br><br>  v.<br><br>MARDIGAL, et al.,<br><br>    Defendants. | Case No. 23-cv-02371 BLF (PR)<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND; DENYING REQUEST FOR SUBPOENAS AS PREMATURE**<br><br>(Docket No. 8) |

  Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against officers and the medical staff at the West County Detention Facility in Contra Costa County, where he is currently confined. Dkt. No. 1. Plaintiff's motion for leave to proceed *in forma pauperis* will be addressed in a separate order.

## DISCUSSION

**A. <u>Standard of Review</u>**

  A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim

upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.    Plaintiff's Claims**

Plaintiff names the following as Defendants: (1) Deputy Madrigal; (2) Deputy Santiago; (3) Sgt. Spangler; (4) Lt. T. Rossberg; and (5) Medical Department Staff. Dkt. No. 1 at 2. All Defendants worked at the West County Detention Facility. *Id.*

Plaintiff alleges that on March 3, 2023, at approximately 1 p.m., Deputy Madrigal denied him access to the restroom, despite Plaintiff having a "medical blue slip" which gave him access to the restroom during lockdown as an "ADA" inmate. Dkt. No. 1 at 2. Plaintiff was forced to defecate into a plastic bag in his cell. *Id.* at 3. Plaintiff approached Deputy Santiago for an inmate grievance form to complain about Deputy Madrigal's actions, and to request a shower to properly clean himself. *Id.* Deputy Santiago laughed and denied the shower, telling Plaintiff to wait until "free time," which was at 3:30 p.m. *Id.* Plaintiff, "feeling more humiliated," collected the information to file a grievance. *Id.*

On March 5, 2023, Sgt. Spangler responded to Plaintiff's grievance: "Deputy Madrigal is on training and the issue was addressed with training officer," who was Deputy Santiago. *Id.* Sgt. Splanger also stated that the "medical blue slip appropriateness will be address[ed] w/medical staff so that this issue does not come up again." *Id.* at 4.

On March 13, 2023, Lt. Rossberg spoke with Plaintiff to discuss the grievance. *Id.* Lt. Rossberg asked Plaintiff, "What can I do to get you to drop this complaint?" *Id.* When Plaintiff refused, Lt. Rossberg promptly ended the conversation. *Id.* On March 14, 2023, Lt. Rossberg's response to the appeal noted, "We spoke on 3/13/2023 regarding your

2

grievance." *Id.*

On March 13, 2023, at 1:30 p.m., Plaintiff was called by RN Karima regarding his blue slip which had been approved three days prior. *Id.* at 4-5. RN Karima informed Plaintiff that he "got into trouble" for renewing the blue slip. *Id.* at 5. RN Karima then revoked the blue slip, merely stating that the "decision came from higher up." *Id.* When Plaintiff filed a grievance on the matter, the medical response stated that "I have access to the restroom during locked down and it expire[s] 5-11-2023." *Id.* Plaintiff appealed the response because RN Karima had taken back that blue slip; a nurse informed him that he had an appointment with the doctor on March 30, 2023. *Id.*

On March 30, 2023, Plaintiff went to medical for what he thought was a routine medical follow up. *Id.* While speaking with Dr. Standish, the discussion turned to the blue slip issue. *Id.* Plaintiff was asked whether he would like to go to Martinez Detention Facility ("MDF") which had restrooms in the cells. *Id.* Plaintiff declined because MDF had less activities and he would have to stay in his cell for longer periods of time. *Id.* Plaintiff advised that "it wasn't about a medical condition or that I am (ADA)." *Id.* When Dr. Standish called for RN Ashanti, she disclosed that Lt. Rossberg had sent an email to medical staff supervisor ordering medical staff to not issue medical blue slips for access to restrooms during lock downs. *Id.* at 5-6.

Plaintiff alleges that Deputy Madrigal, Deputy Santiago, Sgt. Spangler, Lt. Rossberg, and medical staff were "engaging in a course of outrageous conduct" and that "No human being should have been subject to that treatment, disregarding common decency, the retaliation, the threats, the abuse of power, and covering up with the assistance of medical staff." *Id.* at 6. Plaintiff believes their conduct was due to him using the restroom, because he is an ADA inmate, and because he would not "drop my right to grievance." *Id.*

On April 19, 2023, Plaintiff was again confronted by Deputy Madrigal who came to his cell to conduct a "security check." *Id.* at 7. Deputy Madrigal allegedly found

3

something in the cell door, and warned Plaintiff "not do to it again," implying that Plaintiff was hiding things in his cell. *Id.* Deputy Madrigal stated that he found a razor in the same place the previous week. *Id.* Plaintiff felt Deputy Madrigal was harassing him, perhaps even threatening to plant contraband in his cell, in retaliation for the previous month's incident; he denies being responsible for the alleged "razor" contraband. *Id.* Plaintiff filed a grievance for the harassment. *Id.* On April 20, 2023, Sgt. Hayes's response to the grievance stated: "(1) one topic per grievance (2) speak with medical if you need special housing due to bowel issues (3) speak with staff during your hearing due to the write up." *Id.* Plaintiff appealed the findings on the same day. *Id.* at 8. As of the filing of the complaint on May 16, 2023, Plaintiff did not receive a response. *Id.*

Plaintiff claims that his rights under the "8th and 9th Amendments" were violated because he was "not given access to the restroom [being in a dry cell] and equal protection of that access." *Id.* Plaintiff claims the incident was so traumatic that he suffered serious mental anguish from the humiliation and embarrassment and that the "fright of [it] happening again and again is very depressing." *Id.* at 3. He seeks damages for his pain and suffering. *Id.*

Liberally construed, Plaintiff appears to be attempting to state claims under the Eighth Amendment, the ADA, First Amendment, and Fourteenth Amendment. However, some of these claims are deficient for the reasons discussed below.

### 1. **Eighth Amendment**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Amendment imposes duties on prison officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. *See Farmer*, 511 U.S. at 832; *DeShaney v. Winnebago County Dep't of*

4

*Social Servs.*, 489 U.S. 189, 199-200 (1989); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-733; *see, e.g.*, *Taylor v. Riojas, et al.*, 141 S. Ct. 52, 53-54 (2020) (per curiam) (four days in cell covered "nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet," followed by two days in "frigidly cold cell" with sewage on the floor and no bed or clothes such that plaintiff was "left to sleep naked in sewage" violates the Eighth Amendment); *Hearns v. Terhune*, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."), *amended*, 75 F.3d 448 (9th Cir.), *cert. denied*, 516 U.S. 916 (1995).

Here, the circumstances and nature of the deprivation is the denial of restroom and

5

shower access, which involves rights to personal hygiene. The missing factor is the duration of the deprivation, i.e., how long Plaintiff was denied the use of a restroom. Based on the caselaw, the deprivation of basic needs for four days violates the Eighth Amendment. *See Taylor*, 141 S. Ct. at 53-54. In Plaintiff's case, if the denial of restroom access amounted to nothing more than a few hours, it is unlikely to amount to cruel and unusual punishment under the Eighth Amendment. For the same reason, the denial of a shower for what amounts to two and a half hours also does not appear to rise to the level of an Eighth Amendment violation.

It is also unclear whether Defendants had the sufficient culpable state of mind to satisfy the second prong for an Eighth Amendment claim. *Farmer*, 511 U.S. at 834. A prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *See id.* An Eighth Amendment claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *See id.* at 842. Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-37 & n.4; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing that deliberate indifference requires more than negligence). Here, there are no allegations that Defendant Madrigal knew that there was an excessive risk to Plaintiff's health and that he disregarded it when he denied Plaintiff access to the restroom. Nor are there any allegations that Defendant Santiago also disregarded an excessive risk to Plaintiff's health when he denied him access to a shower until "free time."

Plaintiff shall be granted leave to file an amended complaint to attempt to state

sufficient facts to state an Eighth Amendment violation.

### 2. ADA

Plaintiff alleges that he is an ADA inmate, implicating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II protects "a qualified individual with a disability." 42 U.S.C. § 12132. In the context of the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of the person; (B) having a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* § 12102(1). For purposes of § 12102(a), "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

In order to obtain relief under the ADA, a plaintiff must show (1) that he is disabled within the meaning of the act, (2) that he is "otherwise qualified" for the services sought, (3) that he was excluded from the services sought solely by reason of his disability, and (4) that the program in question is a public entity. *See, e.g., Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999).

Plaintiff's allegations are insufficient to state an ADA claim because he fails to show any of these factors. He states that he is "ADA" without explaining his specific disability. He may attempt to state an ADA claim in an amended complaint. However, Plaintiff is advised that monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. *See Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998).

///

### 3. **Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

Plaintiff's allegations are sufficient to state a retaliation claim against Defendant Lt. Rossberg for the revocation of his medical blue slip (adverse action) and against Defendant Madrigal for the harassment regarding contraband *because of* Plaintiff's protected conduct, i.e., filing a grievance. However, the allegations are insufficient for the other Defendants because there are insufficient facts to satisfy all five elements to support a retaliation claim against them. If Plaintiff wants to attempt to state sufficient facts to allege a retaliation claim against any of the other Defendants, he may do so in an amended complaint.

### 4. **Equal Protection**

Plaintiff incorrectly asserts that his right to equal protection was violated under the Ninth Amendment. *See supra* at 8. Rather, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). A plaintiff alleging denial of equal protection based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of the plaintiff's membership in a protected class. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013); *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *see also Byrd v.*

*Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (claim that alleged harmful treatment but mentioned nothing about disparate treatment was properly dismissed); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000) (per curiam) (holding that "class of one" claim requires only that action be irrational and arbitrary, rather than requiring discriminatory intent).

Plaintiff's allegations are insufficient to state an equal protection claim because he fails to explain how Defendants discriminated against him because of his membership in a protected class. Plaintiff does not identify the protected class nor does he explain how specific Defendants' actions were discriminatory. Plaintiff must at least describe similarly situated prisoners who received different treatment than him such that Defendants' actions towards him were irrational and arbitrary. Accordingly, this claim is also dismissed with leave to amend for Plaintiff to attempt to state sufficient factual allegations to support an equal protection claim against each Defendant.

### 5. **Medical Department**

Plaintiff names the "Medical Department" as Defendants but fails to state sufficient facts to allege a cognizable claim against the department as a whole. Furthermore, he identifies RN Karima, Dr. Standish, and RN Ashanti in his statement of facts, but the allegations against them, even liberally construed, do not support a cognizable claim against them under any of the grounds discussed above. Medical staff were responsible for the denial of access to a toilet on March 3, 2013. Plaintiff has not pleaded sufficient facts to state an ADA claim or an equal protection claim against *any* Defendant. Lastly, there are no allegations to indicate that these medical personnel acted in retaliation. Plaintiff may attempt to state sufficient facts to state a cognizable claim against specific medical staff Defendants in an amended complaint.

In preparing an amended complaint, Plaintiff should keep the following in mind. Liability may be imposed on an individual defendant under § 1983 only if Plaintiff can show that the defendant proximately caused the deprivation of a federally protected right.

9

*See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).  A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  *See Leer*, 844 F.2d at 633.

# CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The complaint states the following cognizable claim: retaliation claim against Defendants Lt. Rossberg and Deputy Madrigal.  *See supra* at 8.

2. The following claims are **DISMISSED with leave to amend**: (1) Eighth Amendment claim for the denial of access to the restroom and shower; (2) ADA claim; (3) retaliation claim against any other Defendant; (4) equal protection claim against any Defendant; and (5) claims against the Medical Department and specific medical personnel.

Within **twenty-eight (28) days** of the date this order is filed, Plaintiff shall file an amended complaint to correct the deficiencies described above.  The amended complaint must include the caption and civil case number used in this order, Case No. 23-cv-02371 BLF (PR), and the words "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  The amended complaint supersedes the original, the latter being treated thereafter as non-existent.  *Ramirez v. Cty. Of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  Consequently, claims not included in an amended complaint are no longer claims and defendants not named in an amended complaint are no longer defendants.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir.1992).

**In the alternative**, Plaintiff may file notice in the same time provided that he wishes to strike the deficient claims from the complaint and proceed solely on the cognizable claims identified above in paragraph 1.  The Court will order those claims and

Defendants stricken, and the matter shall proceed on the cognizable claims against the relevant Defendants.

3. **Failure to respond in accordance with this order in the time provided will result in the dismissal with prejudice of all the deficient claims under paragraph 2 for failure to state a claim for relief.  The matter will then proceed based on the cognizable claims identified under paragraph 1.**

4. In light of this order, Plaintiff's request for copies and service of his subpoenas is **DENIED** as premature.  Dkt. No. 8.

4. The Clerk shall include two copies of the court's form complaint with a copy of this order to Plaintiff.

**IT IS SO ORDERED.**

Dated:  __September 21, 2023_____

/s/ Beth Labson Freeman
BETH LABSON FREEMAN
United States District Judge

Order of Dismissal with Leave to Amend; Denying Request
PRO-SE\BLF\CR.22\06980Oden_dwlta

11